# EXHIBIT B

| | |
|---|---|
| ☐ County Court          ■ District Court<br>Mesa County, Colorado<br><br>Court Address:<br>Mesa County District Court<br>Mesa County Justice Center<br>P.O. Box 20000-5030<br>Grand Junction, CO 81502 | |
| Plaintiff(s):   DOUGLAS MAHONEY,<br><br>v.<br><br>Defendant(s): HALLIBURTON ENERGY SERVICES, INC.,  ESIS, INC., and ACE AMERICAN INSURANCE COMPANY. | ▲COURT USE ONLY▲ |
| Attorney for Plaintiff:<br><br>Floyd M. Youngblood, Esq.<br>FLOYD M. YOUNGBLOOD, P.C.<br>4465 Kipling Street, Suite 102<br>Wheat Ridge, CO 80033<br>Phone #: (303) 456-8472  E-Mail: Floyd@Youngbloodlaw.net<br>Fax #: (303) 421-4309          Atty. Reg. #18052 | Case No:<br><br>Division |

### COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Douglas Mahoney (hereinafter "Mahoney" or "Plaintiff"), by and through his attorney Floyd M. Youngblood, P.C., and for his complaint against Defendants state and aver as follows:

### I.  JURIDICTION AND VENUE

1.      Plaintiff, Douglas Mahoney (hereinafter "Mahoney" or "Plaintiff"), resides at 2161 North Ventura Road, Oxnard, CA 93036.

2.      At the time of the incidents bringing rise to this Complaint, Plaintiff was employed by Defendant, Halliburton Energy Services, Inc., (hereinafter "Halliburton") within the State of Colorado.

3.      Halliburton Energy Services, Inc. is a Delaware Corporation registered with the State of Colorado and licensed to conduct business in the State of Colorado.

4.       Upon information and belief, Ace American Insurance Company (hereinafter "Ace American") was the insurance carrier providing Workers' Compensation insurance to Halliburton.

5.       Upon information and belief, ESIS, Inc. (hereinafter "ESIS") was the adjusting company handling Workers Compensation claims on behalf of Defendants, Ace American Insurance Company and/or Halliburton Energy Services, Inc. in the State of Colorado.

6.       On or about February 21, 2009, while in the course and scope of his employment with Halliburton, Plaintiff was injured on the job, suffering injuries to his ankle and knee when he fell down an embankment.

7.       Upon information and belief, at the time Plaintiff sustained his work-related injuries, Defendant Ace American Insurance Company provided Workers' Compensation insurance to Halliburton and/or Halliburton was self-insured and/or was insured under a self-retention policy with such policy being administered by ESIS.

8.       The policy was issued in the State of Colorado and was governed by the Workers' Compensation Act of Colorado.

9.       Plaintiff was, and is, covered by the policy issued by Ace American Insurance Company and his Workers' Compensation claim has been adjusted pursuant to the Workers' Compensation Act of Colorado.

10.      Jurisdiction and venue are proper in Mesa County, Colorado, inasmuch as Plaintiff was injured in Mesa County, Colorado and Halliburton maintains a place of business in Mesa County, Colorado pursuant to C.R.C.P. 98(c).

## II. GENERAL ALLEGATIONS

11.      Plaintiff repeats and incorporates by reference each and every allegations of paragraphs 1 through 10, as if fully set forth herein.

12.      Based upon information belief, Halliburton, is insured by Ace American Insurance Company and/or claims are adjusted by ESIS.

13.      Ace American Insurance Company and/or ESIS is responsible for adjusting and paying for medical benefits and temporary disability benefits for Plaintiff's work-related injuries.

14.      Defendants are legally obligated to provide Workers' Compensation benefits to injured workers pursuant to C.R.S. §8-42-101, *et seq.* and comply with all requirements thereunder.

15.      Defendants are legally obligated to administer Workers' Compensation claims properly and comply with all requirements set forth at C.R.S. §10-3-1101, *et seq.*

16.   On or about February 21, 2009, Plaintiff was injured while in the course and scope of his employment with Halliburton when he slipped and fell down an embankment. Plaintiff injured his right knee and ankle. Plaintiff was taken to the hospital by his supervisor, William Stark, at which time x-rays were taken which disclosed a fracture of the right fibula. Plaintiff was treated and evaluated by Dr. Bryce Christianson, a chiropractor, who referred Plaintiff to Dr. Keenan Vance, an orthopedic surgeon, for evaluation.

17.   Plaintiff saw Dr. Vance on February 23, 2009, at which time Plaintiff also spoke with Brent Cook, who is the health, safety and environmental professional for Halliburton. Mr. Cook indicated that he wanted to be present during Plaintiff's medical examinations and Plaintiff advised him that he did not feel that was appropriate. Mr. Cook; however, said that since Halliburton was paying for Plaintiff's medical treatment, Halliburton had the "right to make decisions".

18.   Following Dr. Vance's examination of Plaintiff on February 23, 2009, Dr. Vance provided Plaintiff with work restrictions which included no driving. However, following the examination, Plaintiff overheard Dr. Vance discussing with Mr. Cook Plaintiff's work restrictions and Mr. Cook on behalf of Halliburton attempted to influence and/or control Plaintiff's medical treatment to the detriment of Plaintiff.

19.   Plaintiff then reported to Mr. Cook's office at Halliburton on February 26, 2009, at which time Plaintiff was offered modified duty. However, Plaintiff advised Mr. Cook that he was precluded from driving pursuant to the medical opinion of Dr. Vance; following which Mr. Cook vehemently disagreed with this opinion and immediately called Dr. Christianson's office and stated "I need a new work release for Douglas Mahoney that specifically states that he can drive". Shortly thereafter, a new work release was provided by Dr. Mosley stating Plaintiff could drive and directly contradicting the opinions of Dr. Vance, the orthopedic surgeon.

20.   As a result of this conflict, Plaintiff was forced to use his vacation time, inasmuch as he was not physically able to perform the job duties under the modified work release. Plaintiff was then subsequently terminated by Halliburton on or about March 5, 2009, allegedly as a "reduction in work force".

21.   Due to his injuries and being laid off, Plaintiff returned to his home in Oxnard, California, whereupon his care and treatment were taken over by Dr. Bret Rosenberg. Although Plaintiff continued to experience problems with both his right knee and right ankle, Dr. Rosenberg was unable to identify any specific problem and thus placed Plaintiff at maximum medical improvement on or about December 3, 2009.

22.   Plaintiff was then referred by Defendants to Dr. John Raschbacher for an impairment rating. This occurred on or about February 12, 2010, at which time Dr. Raschbacher opined Plaintiff had reached maximum medical improvement and had incurred a 7% impairment of his right lower extremity.

23.   Defendants filed a Final Admission of Liability on or about March 1, 2010, to which Plaintiff timely objected and requested a Division Independent Medical Examination.

24.     Inasmuch as Plaintiff had continued to experience problems with his right knee and right ankle, he sought medical treatment with Dr. Herbert Percival. Dr. Percival examined Plaintiff and given his symptoms, recommended an arthroscopy of Plaintiff's right knee. This arthroscopy was performed April 9, 2010, at which time it was noted that Plaintiff had torn his right anterior cruciate ligament and had incurred chrondral damage. The chrondral damage was repaired to the extent able and then Plaintiff returned to Dr. Percival for a right anterior ligament reconstruction, which was performed May 13, 2010.

25.     A Division Independent Medical Examination was performed by Dr. Stephen Lindenbaum on or about June 22, 2010, at which time Dr. Lindenbaum opined that Plaintiff was not at maximum medical improvement and required additional medical treatment for his right ankle, right knee and low back. Dr. Lindenbaum included in his opinion that the right anterior cruciate ligament tear was causally related to Plaintiff's original injury of February 21, 2009.

26.     Defendants then requested Plaintiff return to see Dr. Rosenberg, which he did on July 29, 2010. At that time, Dr. Rosenberg agreed with the opinions of Dr. Lindenbaum that the injury to Plaintiff's knee was causally related to his original injury and that the need for surgery was reasonable, necessary and causally related to such injury.

27.     Defendants allegedly filed an Application for Hearing with the Office of Administrative Courts on or about July 15, 2010, requesting a hearing in an attempt to overcome the opinions offered by Dr. Lindenbaum. Defendants then purportedly set the matter for hearing for October 26, 2010; however, the Claimant referenced was "Richard" Mahoney and in fact Defendants failed to file the proper documentation with the Office of Administrative Courts and thus no hearing was properly scheduled or was conducted.

28.     On or about August 3, 2010, Defendants, through their attorney, filed a Motion for Protective Order, alleging without basis that Plaintiff had "made threatening remarks to Dr. Raschbacher and his staff". Plaintiff, through his attorney, Steven Mullens, filed an objection to such Motion and demanded that Defendants "withdraw, strike and seal the Motion for Protective Order". Defendants then, through their attorney, agreed with Plaintiff's objection and filed a Motion on or about August 16, 2010, "withdrawing, striking and sealing their Motion for Protective Order".

29.     Based upon information and belief, Defendants then discovered on or about October 15, 2010, that this matter was not set for hearing for October 26, 2010 and although they filed a motion requesting the matter be heard, this motion was denied October 28, 2010. Defendants have taken no further affirmative action in an attempt to overcome the Division IME opinions of Dr. Lindenbaum which are now binding.

30.     Defendants next filed a General Admission of Liability on or about November 18, 2010, admitting that Plaintiff was not at maximum medical improvement. However, Defendants refused to authorize medical care as recommended by Dr. Lindenbaum, nor did Defendants reinstate Plaintiff's temporary disability benefits which had been improperly terminated as of July 15, 2009.

-4-

31.    Plaintiff, through his attorney, was forced to file an Application for Hearing requesting medical treatment; temporary disability benefits; and penalties for Defendants failure to provide benefits as required by the Workers' Compensation Act. The hearing was scheduled for February 17, 2011, and Defendants refused to provide Plaintiff with any Workers' Compensation benefits, notwithstanding their General Admission of Liability, until a partial settlement of the outstanding issues was reached the day of hearing, February 17, 2011.

## III. FIRST CLAIM FOR RELIEF
(Breach of the Covenant of Good Faith and Fair Dealing)

32.    Plaintiff repeats and incorporates by reference each and every allegations of paragraphs 1 through 29, as if fully set forth herein.

33.    Defendants have a contractual and implied obligation of good faith and fair dealing to Plaintiff in the handling of Plaintiff's Workers' Compensation claim.

34.    The obligation to Plaintiff includes, but is not limited to, handling his claim in an appropriate fashion, to provide benefits as awarded, and to act in a manner consistent with the purposes of the Colorado Workers' Compensation Act to provide prompt payment and medical care to injured workers who are injured on the job in the State of Colorado, in order to relieve the affects of their industrial injuries.

35.    Defendants breached the covenant of good faith and fair dealing through their conduct as described above and by engaging in the following:

   a.    Attempting to control and dictate Plaintiff's medical treatment;

   b.    Failing to consider Plaintiff's interests as equal with their own interests;

   c.    Refusing or failing to promptly pay claims without conducting a reasonable investigation based upon all available information and/or failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Workers' Compensation insurance policy.

   d.    Maintaining denial of medical and wage-loss benefits, despite receipt of reasonable medical opinions from treating physicians and/or Division IME physicians, despite receipt of information justifying authorization of wage-loss benefits and medical care;

   e.    Failing to promptly provide a reasonable explanation of the basis under the Colorado Workers' Compensation Act in relation to the facts or applicable law for denial of the benefits in question;

   f.    Compelling Plaintiff to institute litigation to recover amounts clearly due under the policy by refusing to timely provide medical and/or wage-loss benefits;

    g.      Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of wage-loss benefits and refusal to authorize reasonable medical care; and

    h.      Using their financial power and resources to delay and deny reasonable and necessary medical care in order to coerce Plaintiff into paying for his own medical care and incurring substantial financial hardship.

36.     Defendants breached the duty of good faith and fair dealing owed to Plaintiff by the unreasonable manner in which they have processed his Workers' Compensation claim and to reach their decisions to deny and delay the payment of benefits on his claim.

37.     Defendants breached the duty of good faith and fair dealing owed to Plaintiff by the unreasonable delay and/or denial of wage-loss and medical benefits.

38.     The expense and delay involved in these disputes has been unnecessary and caused Plaintiff to incur costs associated with medical care; which included insurance premiums, co-pays and deductibles, as well as other expenses.

39.     Defendants' conduct violates industry standards as established by C.R.S. §10-3-1104, regarding "Unfair methods of competition and unfair or deceptive acts or practices".

40.     Defendants knew or should have known their conduct was unreasonable or disregarded the fact that their conduct was unreasonable.

41.     As a result of Defendants' conduct, Plaintiff was forced to endure unnecessary pain and suffering, anxiety and physical impairment.

42.     Plaintiff has suffered injuries, damages and losses as a result of the claim's handling practices implemented by Defendants.

43.     Defendants' patterns and practices, as demonstrated in this case, have improperly shifted the economic burden to a disabled injured worker which is thereby defeating the purpose and intent of the Colorado Workers' Compensation Act, as well as their contractual obligations.

44.     As a direct result of Defendants' breaches of their duties, Plaintiff has been damaged, including but not limited to:

    a.      Plaintiff has endured unnecessary pain and suffering, anxiety, an ulcer, hiatal hernia, depression, and upon information and belief, Plaintiff may have also incurred a heart attack as a result of Defendants' conduct. In addition, Plaintiff's may have suffered damage to his back and according to Plaintiff's chiropractor Plaintiff has a curve in his spine from side to side.

b.    Plaintiff has suffered unnecessary financial hardship and severe emotional distress; and

c.    Plaintiff has suffered a past loss of income, due to an inability to return to work and will suffer financial losses in the future, over the remander of his working life, due to diminished work capacity and the expense of continuing medical care and palliative care.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Douglas Mahoney, prays for judgment against Defendants, Halliburton Energy Services, Inc., ESIS, Inc. and Ace American Insurance Company for:

a.    Actual and compensatory damages;

b.    Pre and post judgment interest as provided by law;

c.    Attorney fees, expert witness fees and costs;

d.    Such other and further relief as the Court deems just and proper.


Plaintiff requests a jury trial on all issues so triable


Respectfully submitted this 18th day of February, 2011.


FLOYD M. YOUNGBLOOD, P.C.


(Original Signature on File)
Floyd M. Youngblood, #18052


Plaintiff's Address:

2161 North Ventura Road
Oxnard, CA 93036